UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONNE RANDOLPH,<br><br>    Petitioner,<br><br>    v.<br><br>WARDEN MATEVOUSIAN,<br><br>    Respondent. | No. 1:17-cv-00397-LJO-SKO HC<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY MOTION FOR DISCOVERY**<br><br>**(Docs. 1 & 21)** |

      Petitioner, Devonne Randolph, is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner contends that his Due Process Rights were violated by the United States Penitentiary, Atwater, California. In addition to his petition for writ of habeas corpus, Petitioner filed a Motion for Discovery. The Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Having reviewed the record as a whole and applicable law, the undersigned recommends that the Court deny the habeas petition and the motion for discovery.

1

## I. Background

On December 20, 2006, the Superior Court for the District of Columbia sentenced Petitioner to 798 months' imprisonment. At all times pertinent to this case, Petitioner was incarcerated at the United States Penitentiary ("USP"), Atwater, California. Petitioner is currently incarcerated at USP Lewisburg, Pennsylvania. His projected release date is September 16, 2063.

On the morning of April 20, 2015, Officer B. Lodge conducted a random search of Petitioner's cell. In the cell, the Officer found torn pieces of paper towel soaked in an unknown red substance. The paper towels were tested using a Narcotics Identification Kit ("NIK"), and found to contain morphine.

In the incident report dated April 20, 2015, Petitioner was charged with possession of narcotics, in violation of BOP Code 113. BOP Code 113 prohibits "[p]ossession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." 28 C.F.R. § 541.3, Table 1, Code 113.

In the incident report, Officer Lodge described the events as follows:

> On April 20, 2015 at approximately 10:10 AM[,] I conducted a random search of cell 129 in Unit 6A. During the search I located 2 torn piece[s] of red paper towel soaked in an unidentified substance inside the left locker inside a homemade cloth shelf hanging from the locker door which contained the personal items of [Petitioner]. The item was then tested by [Special Investigative Support ("SIS")] Technician J. Garcia utilizing . . . the NIK test . . ., resulting in a positive detection for Morphine.

(Doc. 18-2 at 6.) Petitioner received a copy of this incident report on April 20, 2015.

SIS Technician Garcia wrote a memorandum describing the NIK test results:

> On April 20, 2015 at approximately 11:00 AM, I tested 2 torn pieces of red paper towel with a hard construction paper-like texture, [that] appeared to be saturated with an unknown liquid, which gave a strong syrup odor. The items were found in unit 6A cell 129, located inside a homemade cloth material shelf hanging from one of the wall lockers. [Petitioner] is the sole occupant of cell 129. Small pieces of the saturated paper towel were tested with a sequence of NIK test[s] . . .

resulting in a positive detection for Morphine.

*Id*. at 8.

The matter was referred to the Disciplinary Hearing Officer ("DHO"). Prior to the DHO's disciplinary hearing, Petitioner was presented with and signed a Notice of Discipline Hearing form and an Inmate Rights at Discipline Hearing form. Petitioner requested and was appointed a staff representative, Case Management Coordinator ("CMC") L. Ortiz. Prior to the hearing, Petitioner informed CMC Ortiz that a cologne Petitioner purchased from the inmate commissary would trigger a positive result for morphine on a NIK test. Petitioner also claimed a staff witness, Lieutenant Hayes, would attest to this claim. CMC Ortiz emailed Lieutenant Hayes asking, "[Petitioner] said you would attest to the fact the cologne he had does test for morphine?" *Id*. at 21. Lieutenant Hayes responded, "NEGATIVE . . . I have NEVER heard of any such thing." *Id*.

DHO Christopher Liwag conducted a disciplinary hearing on April 27, 2015. At the hearing, Petitioner stated: "It was my rag, but I did not know there were drugs on it. I bought it off the compound." *Id*. at 16.

The DHO considered the following documentary evidence: the incident report, two photos, SIS Technician Garcia's memorandum, emails exchanged between CMC Ortiz and Lieutenant Hayes, and Petitioner's statements. *Id*. Although Petitioner requested Lieutenant Hayes as a witness, Lieutenant Hayes did not testify because CMC Ortiz spoke with him about Petitioner's claims prior to the hearing.

The DHO concluded that Petitioner committed the code violation of which he was accused. The DHO made the following findings and conclusions:

> [Petitioner's] due process rights were read and reviewed by the DHO to [Petitioner]. The DHO confirmed [Petitioner] received a copy of his Incident report, did want to call a witness, did want a staff representative, and had no documentary evidence to submit. [Petitioner] understood his due process rights, and was prepared to proceed with the disciplinary hearing. The DHO noted that the name RANDOLPH was mis-spelled in section 11 of the incident report.

3

> [Petitioner] was aware of the situation. Moreover, [the] grammatical error was moot as [Petitioner] admitted to owning [a] rag laced with drugs in his single cell.
>
> . . .
>
> The DHO finds [Petitioner] committed the prohibited act of POSSESSING NARCOTICS, which is a violation of Code 113.
>
> The DHO relied upon the reporting officer's statement, photos of the rag, support staff memo and emails that [Petitioner] was in possession of drugs in his single cell. [Petitioner] did provide an exculpatory statement and stated, "It was my rag but I did not know there were drugs on it. I bought it off the compound." The DHO weighed this statement but deemed it less credible. [Petitioner] wanted the DHO to remake the drug using the items to see if it tested positive for drugs. The DHO informed [Petitioner] that this could not be done under the circumstances as the DHO is not a drug maker and that the DHO relied on the greater weight of the evidence when making a finding. As such the greater weight of evidence lies within the reporting officer's statement, photos of the piece of rag that was obtained in [Petitioner's] locker, NIK test results which tested positive for morphine. The Staff Representative was present over the telephone . . . and she stated, "I interviewed Lt. Hayes ([Petitioner's] witness) and he does not know of any item sold in the commissary that would of tested positive for drugs." Moreover, an email from Lt. Hayes stated he "NEVER" told [Petitioner] [ ] this allegation that the Federal Bureau of Prisons was selling cologne to inmates that would of tested positive for drugs. The DHO weighed the Staff Representative comments as incriminating.
>
> Based upon the greater weight of the evidence, the DHO is convinced [Petitioner] committed the following act of possessing narcotics, which is a prohibited violation of Code 113.

*Id*. at 17.

As punishment for violating Code 113, the DHO sanctioned Petitioner with the disallowance of 41 days of good conduct time; 30 days in disciplinary segregation; 90 days loss of phone privileges; 90 days loss of visitation privileges; and a $50.00 monetary fine. *Id*.

On March 20, 2017, Petitioner filed this petition for writ of habeas corpus in this Court. On September 21, 2017, Petitioner filed a motion for discovery. The parties do not dispute venue, personal service, subject matter jurisdiction, or exhaustion of remedies.

4

## II. The DHO Did Not Deny Petitioner His Due Process Rights by Rejecting Petitioner's Request to Present Documentary Evidence.

Petitioner contends that he was denied his Due Process Rights because the DHO did not allow him to present documentary evidence. (Doc. 22 at 1.) Specifically, Petitioner alleges he was unable to present evidence to show that the napkin contained coffee, not an illegal narcotic. *Id*. Respondent counters that the petition should be dismissed because Petitioner's disciplinary sanctions were based on "some evidence," which supported the DHO's findings. (Doc. 18 at 4.)

### A. Standard of Review

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1984) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). Due process also requires that a disciplinary decision be supported by "some evidence." *Id*. at 455 (citing *United States ex rel. Vatauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)).

The Supreme Court "has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence." *Id*. at 455 (internal citations omitted). The "some evidence" standard "is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.'" *Id* (citing *Vatauer*, 273 U.S. at 106). The Court does not need to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence to determine whether the standard is satisfied. *Id*. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56

(internal citations omitted). Therefore, the Due Process Clause does not require the Court to "set aside decisions of prison administrators that have some basis in fact." *Id*. at 456.

### B. Petitioner Was Not Denied His Due Process Rights.

Petitioner alleges that his Due Process Rights were violated "when the DHO refused to allow him to present documentary evidence that would prove the paper napkin did not contain meth or any type of illegal substance and was in fact coffee, sold [at] the commissary." (Doc. 22 at 1.)

Prisoners facing disciplinary hearings have the right to call witnesses and present documentary evidence in their own defense when permitting the inmate to do so "will not be unduly hazardous to institutional safety or correctional goals." *Ponte v. Real*, 471 U.S. 491, 499 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Nonetheless, determining an inmate's right to present witnesses and relevant documentary evidence requires the court to balance the individual inmate's interest in avoiding loss of good conduct time against the institution's need to keep the hearing within reasonable limits and to limit witnesses that may create a risk of reprisal or undermine authority. *Wolff*, 418 U.S. at 566.

Petitioner requested that the DHO "remake the drug using the items to see if it tested positive for drugs." (Doc. 18-2 at17.) The DHO refused because "the DHO is not a drug maker." *Id*. Although inmates have a right to present documentary evidence, the Court "should not be too ready to exercise oversight and put aside the judgment of prison administrators." *Wolff*, 418 U.S. at 566. The Court must "balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits." *Id*. Here, the decision not to "remake the drug" to confirm the NIK test was in the DHO's discretion to maintain "reasonable limits" on the scope of the hearing.

Further, Petitioner's Due Process Rights were not violated as the DHO supported his findings with "some evidence." A review of the record reveals there was evidence to support the charges. The towel was found during a random search of Petitioner's cell in Petitioner's locker. When tested, the towel came back positive for morphine. Although Petitioner tried to present evidence that cologne could test positive for morphine, Petitioner's proposed witness denied the claim. This evidence constitutes at least "some evidence" supporting the guilty finding. Because the "some evidence" standard was met in this case, the Court recommends dismissing Petitioner's claim.

### III. Racial Discrimination Claims Are Not Cognizable Pursuant to 28 U.S.C. § 2241.

Petitioner alleges that his Due Process rights were violated at USP Atwater as prison officers used NIK tests to "deliberately create false positives" and used write-ups "in a racial[ly] discriminatory manner." (Doc. 1 at 3.) Petitioner claims prison officers used NIK tests to convict black, but not white, prisoners of narcotics possession charges. *Id*.

As the Court previously instructed Petitioner, challenges to the conditions of federal prison life are properly brought in a civil rights action under 42 U.S.C. § 1983 or in a *Bivens* action. *McCarthy v. Bronson*, 500 U.S. 136, 142 (1991). A federal petition for writ of habeas corpus concerns whether a petitioner is in custody in violation of the Constitution. 28 U.S.C. § 2241. "Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Preiser v. Rodriguez*, 411 U.S. 475, 488-89 (1973); s*ee also Nettles v. Grounds*, 788 F.3d 992, 1004 (9th Cir. 2015).

Petitioner's allegation of racial discrimination involves the conditions of his confinement, so he cannot proceed on this claim through a writ of habeas corpus. Instead, Petitioner must pursue this claim through a *Bivens* action. *Bivens v. Six Unknown Named Agents of Federal*

7

*Bureau of Narcotics*, 408 U.S. 388 (1971) (The United State Supreme Court established a federal counterpart to a 42 U.S.C. § 1983 action and established the right to sue a federal employee for a civil rights action.) Therefore, the Court recommends dismissing Petitioner's claim for racial discrimination without prejudice to allow Petitioner to re-file this claim pursuant to *Bivens*.

### IV. Motion for Discovery

Petitioner filed a motion for discovery seeking "limited discovery" on evidence possessed by the Respondent Warden that will establish the allegations contained in the" petition for writ of habeas corpus. (Doc. 21 at 3.)

#### A. Standard of Review

"Habeas petitioners are not routinely entitled to discovery." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). The discovery provisions of the Federal Rules of Civil Procedure do not generally apply in habeas cases. *Harris v. Nelson*, 394 U.S. 286, 295 (1969). "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." *See* Rule 6(a) of the Rules Governing § 2254 Cases.

#### B. Petitioner Is Not Entitled to Discovery

Petitioner requests discovery to prove that he was unable to present exculpatory evidence at his DHO hearing. Notwithstanding the fact that the Court has determined that Petitioner was not entitled to present this evidence at the hearing, the Court will address Petitioner's motion.

Petitioner specifically requests discovery of "documents, e-mails, and NIK test[s] performed in December 2016 and concluded in January 2017." Petitioner alleges that the "Virginia federal public defenders['] office sent pieces of paper to inmates at USP Atwater that the NIK test falsely created positive test [results] for meth." (Doc. 21 at 1-2.) Petitioner notes that charges for three inmates were dismissed based on false positive NIK test results. *Id.* at 2.

Petitioner's violation for drug possession occurred on April 20, 2015. Petitioner is requesting documentary evidence from December 2016 to January 2017—approximately 1 year and 7 months *after* Petitioner's violation. The Court cannot conclude that there is good cause to allow Petitioner discovery of evidence that does not apply to his case. Therefore, the Court recommends denying Petitioner's motion for discovery.

### V.  Evidentiary Hearing

Petitioner requests the Court hold an evidentiary hearing. In habeas proceedings, "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). "It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Id.* at 1176. Here, all of Petitioner's claims can be resolved by reference to the state court record. Accordingly, the Court recommends denying Petitioner's request for an evidentiary hearing.

### VI.  Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.
(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented required further adjudication. Accordingly, the Court recommends declining to issue a certificate of appealability.

**VII.** **Conclusion and Recommendation**

Based on the foregoing, the undersigned recommends: the Court

(1) deny Petitioner's discovery and insufficient evidence claims with prejudice and decline to issue a certificate of appealability;

(2) deny Petitioner's racial discrimination claim without prejudice; and

(3) deny Petitioner's motion for discovery.

//

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 23, 2018**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE